IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FRANK RANDALL RICHARDSON                                          PLAINTIFF

V.                         NO. 10-5025

MICHAEL J. ASTRUE,
Commissioner of Social Security                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Frank Randall Richardson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Title II and Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed his application for DIB on February 1, 2007, and protectively filed his application for SSI on January 25, 2007, alleging an inability to work since May 15, 2005, due to a back and neck injury.[1] (Tr. 9, 160). An administrative hearing was held on January 26, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 17-40).

By written decision dated April 22, 2009, the ALJ found Plaintiff had an impairment or combination of impairments that was severe - degenerative disc disease of the cervical and

---

[1] At the hearing, Plaintiff's attorney amended the onset date to July 21, 2005. (Tr. 26).

-1-

lumbar spine. (Tr. 11 ). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift 20 pounds occasionally or 10 pounds frequently. During an 8-hour workday, he can stand/walk or sit for 6 hours, and he can only occasionally stoop.

(Tr. 13).[2] With the help of a vocational expert (VE), the ALJ determined that Plaintiff had acquired work skills from his past relevant work that were transferable to other occupations, with jobs existing in significant numbers in the national economy, such as: maintenance dispatcher; assignment clerk; auto self-service gas station attendant; and hardware salesman. (Tr. 16).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 4, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). The case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

**II. Evidence Presented:**

Plaintiff was born in 1962 and completed the ninth grade in school. He was injured while working in May of 2005, when a 200 pound pipe landed on his head and shoulder. (Tr. 208, 220). He visited Dr. David L. Beeman at Garrett Goss Clinic on June 27, 2005, complaining that his left hand and fourth finger were going numb. (Tr. 208). At that time, Dr. Beeman found that

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. ...20 C.F.R. § 404.1567(b).

Plaintiff had full range of motion in his neck and some mild paraspinous muscle tenderness of the cervical spine. (Tr. 208). He had normal motor function and strength in his bilateral upper extremities, and an x-ray of the cervical spine was normal. (Tr. 208). Dr. Beeman also noted that Plaintiff smoked one to two packs of cigarettes per day.

On July 5, 2005, Plaintiff saw Dr. Beeman again, stating that his numbness in his left fourth and fifth fingers had not improved. (Tr. 207). He denied any back pain and fever, chills, chest pain or rash, and stated that he had normal motor function and normal strength. (Tr. 207). He was again found to have full range of motion in his neck, and his upper extremity had full range of motion. (Tr. 207).

On July 8, 2005, a MRI of Plaintiff's cervical spine was taken at St. Mary Hospital. (Tr. 210). The impression was:

> Mild degenerative disc disease involving the cervical spine with mild circumferential disc bulge and posterior osteophytic ridging identified at C5-6, which results in only mild narrowing of the AP diameter of the spinal canal and mild narrowing of the neural foramina bilaterally.

(Tr. 210).

On August 1, 2005, Plaintiff was seen for a neurosurgical evaluation by Dr. Regan Gallaher at Northwest Arkansas Neuroscience Institute, upon referral by Dr. Beeman. (Tr. 220-221). Plaintiff was reported as having neck pain and numbness and tingling in his left second and third digits of his left arm. Plaintiff indicated that Ibuprofen had helped him with his neck pain. He had good range of motion throughout, with normal upper extremity motor and symmetric reflexes bilaterally at the biceps. (Tr. 220). The MRI was noted as essentially unremarkable, and he was reported as having only very early signs of spondylosis at C5-6 with

AO72A
(Rev. 8/82)

a mild disc bulge, but no significant foraminal stenosis. (Tr. 220). Dr. Gallaher assessed Plaintiff with probable neck pain from his injury, and prescribed physical therapy, as well as Ibuprofen and muscle relaxants. Dr. Gallaher also assessed Plaintiff with probable left ulnar neuropathy, and stated that he would like him to see one of the neurologists at Mercy and have a neurology consultation, along with an EMG evaluation of his left ulnar distribution, since he was not significantly getting better over two months. (Tr. 221). Dr. Gallaher did not anticipate any need for neurosurgical intervention concerning Plaintiff's neck in the near future. (Tr. 221).

On August 26, 2005, Dr. Gary L. Moffitt provided a "physician's report" to the Arkansas Workers' Compensation Commission. (Tr. 223-224). Dr. Moffitt found that Plaintiff's neck was supple, that he had tenderness to palpation in the musculature lateral to his upper thoracic spine on the right side, that he had full range of motion of his shoulders and normal upper extremity reflexes and normal grip. (Tr. 225). He believed the pain in the right side of his head and shoulder was muscular in nature, but that it sounded like he might have a radiculopathy or an ulnar nerve issue on the left side. (Tr,. 225). He stated that he would recommend nerve conduction studies, an EMG and physical therapy, but that Plaintiff could return to work in the meantime, with the only limitations being the need to avoid lifting, pushing and pulling with more than 20 pounds of force and the need to avoid doing above chest level work. (Tr. 225).

In August of 2005, Plaintiff received physical therapy at the Arkansas Occupational Health Clinic. (Tr. 219, 234-37). However, on September 12, 2005, Plaintiff was discharged from physical therapy because he was a "no show" for three consecutive appointments. (Tr. 231).

On March 20, 2007, Plaintiff was seen by Dr. Saad M. Al-Shathir at Physical Medicine

-4-

& Rehabilitation, Electromyography. (Tr. 243-245). Plaintiff's chief complaint was neck pain, right shoulder pain, dorsal lumbar pain, and right ankle pain. (Tr. 243). He was found to have no muscle atrophy, no deformity, and no scoliosis. His gait was reported as antalgic, with normal speed and stability. (Tr. 24). Dr. Al-Shathir found Plaintiff was poorly kept with poor hygiene. (Tr. 24). His diagnosis was as follows:

1. Neck pain. No neurological deficits.
2. Spine pain with no neurological deficits or significant clinical abnormality. He indicated that he did not have any x-ray done to his back after the accident since he was terminated.
3. Right ankle pain with no significant range of motion or clinical abnormality.
4. Right shoulder pain with some loss of range of motion. No muscle atrophy.
5. COPD from smoking
6. Hypertension, untreated.

(Tr. 24). In his "Range of Joint Motion Evaluation Chart" of the same date, Dr. Al-Shathir found that Plaintiff's back flexion was "65 out of 90", his right shoulder abduction in supination was "104 of 150"; his right shoulder forward elevation was "120 of 150", his right shoulder internal rotation was "29 of 80", his right shoulder external rotation was "80 of 90", and that Plaintiff could effectively oppose the thumb to the fingertips, could manipulate small objects, and could effectively grasp tools, such as a hammer. (Tr. 246-248).

On March 27, 2007, a Physical RFC Assessment was completed by Dr. Thurma Fiegel. (Tr. 2510258). Dr. Fiegel concluded that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as when for lift and/or carry.

(Tr. 252). Dr. Fiegel found no nerve root compression, and no manipulative, visual,

AO72A
(Rev. 8/82)

communicative or environmental limitations were established. (Tr. 252, 254-255). Dr. Fiegel further found that with respect to postural limitations, Plaintiff could frequently climb ramp/stairs, ladder/rope/scaffolds; balance; kneel; crouch; and crawl; and could occasionally stoop. (Tr. 253).

On May 31, 2007, Plaintiff was treated at Christian Medical Clinic of Grand Lake, Inc. in Grove, Oklahoma, complaining of pain in his back, shoulders, neck, and right ankle. He was prescribed Diclofenac and Trazadone. (Tr. 213, 276). He was noted as not taking any medication except Tylenol, which was not working. (Tr. 276). He also complained of depression. (Tr. 276). X-rays of his lumbar spine revealed tiny metallic foreign objects in the posterior paraspinous soft tissue, but there were no acute lumbar findings. (Tr. 275). X-rays of his thoracic spine revealed no acute findings. (Tr. 275).

On September 17, 2007, a Psychiatric Review Technique was completed by Sharon Taber, Ph.D. (Tr. 259-272). She reported that Plaintiff's mental impairment was not severe (Tr. 259), and that Plaintiff suffered from depressive syndrome characterized by feelings of guilt or worthlessness. (Tr. 259, 262). She found that he had no degree of limitation in activities of daily living or in maintaining social functioning, and that there were no episodes of decompensation. (Tr. 269). She further found that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. (Tr. 269). She noted that Plaintiff had never sought nor had he ever received any psychotropic medication or mental health counseling. (Tr. 271).

In a Function Report dated January 26, 2007, Plaintiff stated that on a daily basis, he woke up and took three Acetamenophen tablets, drank coffee, went outside to smoke cigarettes and moved around the yard trying to relieve some pain. (Tr. 120). He tried to do some basic

chores like make the bed and pick up his clothes, and moved from the recliner in the living room to the yard to smoke periodically, and would lie down in bed in the afternoon. (Tr. 120). He reported that it was painful to put his arms in shirts and jackets, and that he had difficulty bending to put on his pants, socks, and shoes. He also stated that it was hard for him to raise his arms and twist around to wash his body, that he had pain raising his hand to his mouth and difficulty using utensils. (Tr. 121). He reported that he shopped for food, clothing, toiletries one or two times a month for two to three hours, and that he could not walk for any distance greater than 100 to 200 yards without leg and back pain. (Tr. 124). He stated that he was easily irritated, lacked patience, and did not have very good bowel control. (Tr. 125-126). He stated his pain and fatigue made it complicated or impossible to complete a task and to concentrate, and that using his hand was difficult and caused loss of grip. (Tr. 127).

In an undated Disability Report, Plaintiff stated that he did not have very good mobility, sometimes had trouble breathing, and had numbness in him arms and hands. (Tr. 160). In a June 1, 2007 Disability Report - Appeal - Plaintiff stated that he had been getting very depressed. (Tr. 182).

In another undated Disability Report - Appeal - Plaintiff reported that his upper back and right shoulder were very painful and that his right ankle hurt and was hard to walk on. (Tr. 192). He stated that he was depressed and could not afford any counseling or medication. (Tr. 192). He reported he was taking Fiorcet for pain, Trazadone for depression and Tylenol for pain, with no side effects. (Tr. 194).

At the hearing held on January 26, 2009, Plaintiff testified that since his May 15, 2005 injury, he has had pain in his neck, shoulders, upper part of his back and his right ankle, right

arm and right shoulder, and that his left hand became numb. (Tr. 26). He stated that he had not been back to doctors because he could not afford them, and that he was living with his parents. (Tr. 28). He stated that during the day, he did not do very much at all. (Tr. 28). He stated that he could not lift with his right arm or hand like he used to, that he had numbness in his left hand, and that his neck did not want to move. (Tr. 29-30). He stated that he could hardly bend over to tie his shoes, that he took lots of Tylenol, and was not able to drive because his legs pinched up and would "bind on him." (Tr. 31). He testified that the last time he saw a doctor was the previous summer at a free clinic in Grove. (Tr. 34). He stated that he went there to see about getting some help with his back, and was sent over to get x-rays. When he went back to see the doctor, he was told that the x-rays did not show any significant problems, "so I did not go back to him after that." (Tr. 34). He stated that he never got to see a neurologist that he was referred to because his workers' compensation claim was denied. (Tr. 35). He also stated that he went to Christian Medical Services and was being treated for depression, and quit taking the medicine they prescribed, because within about thirty minutes "you go to sleep and you can't wake up for nothing." (Tr. 35).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports

AO72A
(Rev. 8/82)

the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final

AO72A
(Rev. 8/82)

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion:**

    **A. Plaintiff's Impairments:**

The ALJ concluded that Plaintiff's degenerative disc disease of the cervical and lumbar spine was severe, but that Plaintiff's depression had no more than a minimal effect on his physical or mental ability to perform basic mental work activities and was therefore non-severe.

The Court believes there is sufficient evidence to support the ALJ's conclusion that Plaintiff's depression is non-severe. The ALJ considered Plaintiff's activities of daily living, social functioning, concentration, persistence or pace, and lack of episodes of decompensation in making her determination. (Tr. 12). Furthermore, prior to May 31, 2007, when Plaintiff reported his depression to the Christian Medical Clinic in Grove, Oklahoma, he had not sought any mental health treatment. The physician at the Christian Medical Clinic prescribed Trazadone for Plaintiff's depression, but Plaintiff apparently quit taking it because it made him go to sleep. (Tr. 35). A claimant's decision not to follow prescribed treatment may undercut his allegations that he is completely unable to work. See Rankin v. Apfel, 195 F.3d 427, 429 (8th Cir. 1999). There is substantial evidence to support the ALJ's finding that Plaintiff's depression is not severe.

    **B. Subjective Complaints and Credibility Analysis:**

In assessing Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third

parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

      In the present case, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 14).

      After reviewing the administrative record, the Court concludes that the ALJ properly evaluated Plaintiff's subjective complaints. The medical records regarding Plaintiff's spine failed to show any neurological deficits or significant clinical abnormalities. The 2005 MRI of Plaintiff's cervical spine revealed only mild degenerative disc disease involving the cervical spine, with mild circumferential disc bulge and posterior osteophytic ridging identified at C5-6, which results in only mild narrowing of the AP diameter of the spinal canal and mild narrowing of the neural foramina bilaterally. The MRI was reported essentially unremarkable by Dr. Gallaher, with only early signs of spondylosis at C5-6, but no significant foraminal stenosis. Although Plaintiff did have some limited range of motion in his joints, he was able to effectively oppose the thumb to the fingertips and could manipulate small objects and grasp tools. In 2007,

x-rays of his lumbar spine and thoracic spine revealed no acute findings. Until May 31, 2007, Plaintiff only took over the counter medication for pain, and was prescribed Diclofenac for pain and Trazadone for depression by the Christian Medical Clinic. "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000); see also Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987).

Plaintiff indicated that he was unable to afford counseling or medication. However, Plaintiff failed to present any evidence that he was denied treatment or medicine due to lack of finances. A lack of means to pay for medical services "does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations." Webb v. Astrue, 2011 WL 98925, at *5 (W.D. Ark., Jan. 12, 2011), quoting from Cole v. Astrue, 2009 WL 3158209, at *6 (W.D.Ark., Sept. 29, 2009). Furthermore, Plaintiff never chose to forgo smoking one to two packs of cigarettes a day to help finance medical treatment or pain medication. Johnson v. Astrue, 2008 WL 4488290, at *12 (E.D. Mo., Sept. 29, 2008). Based upon the record as a whole, the undersigned finds substantial evidence to support the ALJ's credibility determinations.

**C. RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from

symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC "must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of agency medical consultants, as well as treating physicians, Plaintiff's subjective complaints, and his medical records when she determined Plaintiff could perform the full range of light work, subject to the limitation that he could lift 20 pounds occasionally or 10 pounds frequently, and that during an 8-hour workday, he could stand/walk or sit for 6 hours, and could only occasionally stoop. The ALJ gave great weight to the medical source opinion provided by Dr. Fiegel, which was completed on March 27, 2007. Plaintiff provided no contrary RFC assessment by another physician, treating or otherwise. Thus, the ALJ had an adequate medical basis to find Plaintiff had the RFC to perform light work with limitations. See Moore v. Astrue, 572 F.3d 520, 523-524 (8th Cir. 2009). Dr. Fiegel's assessment was not contradicted by any other evidence in the record regarding Plaintiff's physical limitations. Although in 2005, Dr. Beeman, Dr. Gallaher, and Dr. Moffitt recommended a nerve conduction study and/or neurology consult, the more recent 2007 assessments indicate that Plaintiff is capable of performing activity consistent with the RFC assessment provided by the ALJ. Based on the entire evidence of record, the Court believes there is substantial evidence to support the ALJ's RFC findings.

### D. Failure to Fully Develop the Record:

Plaintiff contends that the ALJ failed to fully develop the record by not procuring a Mental RFC Assessment, by not determining the extent of Plaintiff's diagnosed hypertension, chronic obstructive pulmonary disease and obesity, and their resulting effects on his ability to function in the workplace.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The ALJ is only required to re-contact medical sources "whenever the evidence the ALJ receives from a claimant's medical source is inadequate to determine whether the claimant is disabled." Bond v. Astrue, 2008 WL 2328346, *3 (W.D. Ark. 2008). In the present case, Plaintiff never indicated in his reports or testimony that hypertension, COPD, or obesity limited his ability to function in the workplace, and Plaintiff failed to produce records which indicate these conditions limit his ability to function to such a degree that restricts his activities to preclude all work. Furthermore, the evidence in the present case was not inadequate for the ALJ to determine whether Plaintiff is disabled. The Court believes there is substantial evidence to

support the ALJ's findings and that the ALJ did not fail to fully develop the record.

## V. Conclusion:

Based on the foregoing, the Court affirms the ALJ's decision and dismisses the Plaintiff's case with prejudice.

IT IS SO ORDERED this 2nd day of March, 2011.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)